1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

HALLMARK SPECIALTY INSURANCE
COMPANY,

Case No. 20-cv-02046-HSG

8

Plaintiff,

**ORDER GRANTING MOTION TO
DISMISS**

9

v.

Re: Dkt. No. 14

10
11

THE CONTINENTAL INSURANCE
COMPANY, et al.,

12

Defendants.

13
14

Pending before the Court is the motion to dismiss filed by Defendants The Continental

15

Insurance Company and the National Fire Insurance Company of Hartford.  *See* Dkt. No. 14.  The

16

Court held a telephonic hearing on May 28, 2020.  As detailed below, the Court **GRANTS** the

17

motion.

18

## I.    BACKGROUND

19

Plaintiff Hallmark Insurance Company filed this insurance action against Defendants

20

seeking $1,000,000 in damages based on Defendants' failure to defend against, and contribute to

21

the settlement of, a lawsuit following a trucking accident.  *See* Dkt. No. 11 ("FAC").  On May 31,

22

2018, Jerry Lee Flick, Sr. was operating a Freightliner tractor for Western Home Transport, Inc.

23

when the tractor collided with Jesus F. Biguerias's vehicle.  *See id.* at ¶¶ 18, 20.  At the time, Mr.

24

Flick was pulling a trailer owned by Guerdon Enterprises, LLC.  *Id.*

25

Both Western and Guerdon had commercial automobile liability insurance policies at the

26

time of the accident.  *See id.* at ¶¶ 8–18.  Western had two policies.  *See id.* at ¶¶ 11–14.  The first

27

was through Northland Insurance Company, and it included coverage for bodily injury and

28

property damage "caused by an accident and resulting from the ownership, maintenance or use" of

the Western tractor and attached Guerdon trailer ("Northland Policy"). *See id.* at ¶ 13. The Northland Policy contained a $1,000,000 limit of liability per accident. The second policy was "an excess policy" through Plaintiff, that contained a $4,000,000 limit of liability ("Hallmark Policy"). *See id.* at ¶ 14. Under the Hallmark Policy, Plaintiff agreed to pay "the ultimate net loss in excess of the applicable limits of the underlying insurance . . . whether such insurance is collectible or not." *Id.* (capitalizations omitted). However, the Hallmark Policy also stated that:

> If other insurance, whether collectible or not, is available to the inured covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afford by this policy shall apply in excess of and shall not contribute with such other insurance.

*Id.* at ¶ 15 (capitalizations omitted). Guerdon, the owner of the trailer, had an insurance policy through Defendants, which included "liability coverage for insureds for a Guerdon trailer pulled by a power unit owned by Western Home Transport, Inc." ("Continental Policy"). *See id.* at ¶ 8. Plaintiff alleges that the Continental Policy provided coverage to Western as an insured while it was pulling a Guerdon trailer. *See id.* The Continental Policy contained a $1,000,000 limit of liability. *Id.*

Following the trucking accident, Mr. Biguerias filed a lawsuit against both Western and Mr. Flick. *See id.* at ¶ 20; *see also Biguerias v. Western Home Transport*, No. HG19041699 (Alameda County Superior Court). Plaintiff alleges that Western tendered its defense against the lawsuit to Northland, which retained counsel. *See id.* at ¶ 21. When Plaintiff realized that Mr. Biguerias was asserting a claim against the Hallmark Policy too, Plaintiff demanded that Western provide information regarding the insurance policy for the Guerdon trailer involved in the accident. *See id.* at ¶¶ 23–26. Plaintiff alleges that on February 21, 2020, it provided notice of the lawsuit to Defendants. *See id.* at ¶ 29.

Six days later, on February 27, 2020, Mr. Biguerias executed a settlement agreement to resolve the lawsuit for $4,988,493.59. *See id.* at ¶ 30. Northland paid its remaining $988,493.59 policy limit. *Id.* And Plaintiff paid its $4,000,000 policy limit, subject to a full reservation of

United States District Court
Northern District of California

1    rights. *See id.* at ¶¶ 30–31. Plaintiff provided a copy of the settlement agreement to Defendants

2    on March 9, 2020, but Defendants failed to indemnify Western against the lawsuit or contribute to

3    the settlement. *See id.* at ¶¶ 32–34, 43. As a result, Western exhausted its Hallmark Policy to

4    settle the lawsuit. *See id.* at ¶¶ 44–45. Plaintiff alleges that by contributing to the settlement, it is

5    equitably subrogated to Western's rights. *See id.* at ¶¶ 37–38, 46–47. Based on these allegations,

6    Plaintiff alleges two causes of action for (1) indemnity; and (2) unjust enrichment. *See id.* at

7    ¶¶ 39–52.

8        Defendants now seek to dismiss both of Plaintiff's causes of action under Federal Rule of

9    Civil Procedure 12(b)(6).

10   ## II.    LEGAL STANDARD

11       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

12   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

13   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

14   granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

15   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

16   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule

17   12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

18   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

19   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

20   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21       In reviewing the plausibility of a complaint, courts "accept factual allegations in the

22   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

23   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,

24   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

25   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

26   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

27   ## III.   DISCUSSION

28       As an initial matter, Defendants contend in a single sentence that Continental is an

improper Defendant in this action because National Fire actually issued the insurance policy at issue. *See* Dkt. No. 14 at 1.  In response, Plaintiff points out that it has alleged that Continental was identified as Guerdon's insurer on the certificate of insurance.  *See* Dkt. No. 17 at 2, n.2; *see also* FAC at ¶ 28.   However, Defendants appear to abandon this argument in reply, and in any event have not met their burden of establishing that Continental is an improper party at this stage in the litigation.  The Court therefore refers collectively to Continental and National Fire as Defendants in this action.

The critical dispute among the parties in this action is over the priority of the three insurance policies applicable to the May 31, 2018, accident, and the related lawsuit.  Plaintiff alleges that (1) the Northland Policy; (2) the Continental Policy; and only then (3) the Hallmark Policy should have been relied on in contributing to the settlement.  *See* FAC at ¶ 35.  Thus, Plaintiff asserts that Defendants should have paid their $1,000,000 policy limit toward the settlement with Mr. Biguerias.  *See, e.g.*, *id.* at ¶¶ 34–35. Defendants urge that Northland and Plaintiff, as direct insurers of the tractor, must pay first.  *See* Dkt. No. 14 at 8–9.  In their motion to dismiss, Defendants suggest that Plaintiff's theory of liability runs contrary to California insurance law and the terms of the Continental Policy.

### A.   California Rules for Interpreting Insurance Contracts

The parties appear to agree that California law governs this dispute.  Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation."  *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (Cal. 2012).  "While insurance contracts may have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (Cal. 1992).  "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."  *Id.*  "Such intent is to be inferred, if possible, solely from the written provisions of the contract."  *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (Cal. 1990).  "If contractual language is clear and explicit, it governs."  *Bank of the West*, 2 Cal. 4th at 1264.  "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls

1    judicial interpretation." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (Cal. 1995) (quoting

2    Cal. Civ. Code § 1644).

3        "A policy provision will be considered ambiguous when it is capable of two or more

4    constructions, both of which are reasonable." *Id.*  "A term is not ambiguous merely because the

5    policies do not define it." *Continental*, 55 Cal. 4th at 195.  "Language in a contract must be

6    construed in the context of that instrument as a whole, and in the circumstances of that case, and

7    the language cannot be found to be ambiguous in the abstract." *Bank of the West*, 2 Cal. 4th at

8    1265 (quotations omitted).  "If an asserted ambiguity is not eliminated by the language and

9    context of the policy, courts then invoke the principle that ambiguities are generally construed

10   against the party who caused the uncertainty to exist (*i.e.*, the insurer) in order to protect the

11   insured's reasonable expectation of coverage." *See La Jolla Beach & Tennis Club, Inc. v. Indus.*

12   *Indemnity Co.*, 9 Cal. 4th 27, 37 (Cal. 1994).  In the context of a claim for equitable subrogation,

13   the "insurer entitled to subrogation is in the same position as an assignee of the insured's claim,

14   and succeeds only to the rights of the insured." *See Reliance Nat'l Indem. Co. v. Gen. Star Indem.*

15   *Co.*, 72 Cal. App. 4th 1063, 1078 (Ca. Ct. App. 1999).

16       **B.    California Insurance Code § 11580.9**

17       Both parties agree that California Insurance Code § 11580.9 governs the question of

18   insurance priority in this case, but they disagree as to what outcome the statute requires.  *Compare*

19   Dkt. No. 14 at 8–9, *with* Dkt. No. 17 at 3–6.  In circumstances where two or more liability

20   insurance policies cover the same accident, the California Legislature has adopted "conclusive

21   presumptions" to minimize insurance coverage litigation and resolve the question of which policy

22   is "primary" (such that its policy limits must be exhausted first), and which is "excess." *See* Cal.

23   Ins. Code § 11580.9; *see also Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App.

24   3d 1285, 1295 (Cal. Ct. App. 1989) ("'Excess' or secondary coverage is coverage whereby, under

25   the terms of the policy, liability attaches only after a predetermined amount of primary coverage

26   has been exhausted.").  The California Legislature declared that "it [is] the public policy of this

27   state that Section 11580.9 of the Insurance Code expresses the total public policy of this state

28   respecting the order in which two or more of such liability insurance policies covering the same

United States District Court
Northern District of California

1   loss shall apply." *See* Cal. Ins. Code § 11580.8.

2       "Section 11580.9 contains a number of subdivisions designed to cover many common

3   coverage dispute situations; each [subdivision] addresses a different set of factual circumstances

4   and identifies which policies will be deemed primary and which policies will be deemed excess."

5   *Scottsdale Indem. Co. v. Nat'l Cont'l Ins. Co.*, 229 Cal. App. 4th 1166, 1170 (Cal. Ct. App. 2014)

6   (quotation omitted).  Section 11580.9(h) provides:

8           [W]hen two or more policies affording valid and collectible
            automobile liability insurance apply to a power unit and an attached
9           trailer or trailers in an occurrence out of which a liability loss shall
            arise, and one policy affords coverage to a named insured in the
            business of a trucker, defined as any person or organization engaged
10          in the business of transporting property by auto for hire, then the
            following shall be conclusively presumed:  If at the time of loss, the
11          power unit is being operated by any person in the business of a
            trucker, the insurance afforded by the policy to the person engaged in
12          the business of a trucker shall be primary for both power unit and
            trailer or trailers, and the insurance afforded by the other policy shall
13          be excess.

15   Cal. Ins. Code § 11580.9(h).  The California Court of Appeal has explained that subdivision (h), in

16   particular, "was added to address a conflict in the decisions whether the insurer of the power unit

17   [*i.e.*, the tractor] or the insurer of the trailer was primary when two different policies covered

18   separate parts of the rig."  *See Scottsdale*, 229 Cal. App. 4th at 1172.

19       By its express terms, § 11580.9(h) makes the insurance policy of  "a named insured in the

20   business of a trucker" primary.  *See* Cal. Ins. Code § 11580.9(h).  Here, Plaintiff alleges, and it

21   appears to be undisputed, that at the time of the accident Mr. Flick was "engaged in the business

22   of transporting property by auto for hire."  *See* FAC at ¶¶ 18–19.  It is also undisputed that Mr.

23   Flick was operating the "power unit" (*i.e.*, the Western tractor) for Western at the time of the

24   accident.  *See id.*  Therefore, the "the power unit [was] being operated by a[] person in the

25   business of a trucker" within the meaning of subdivision (h) at the time of the accident.  *See* Cal.

26   Ins. Code § 11580.9(h).  Because Northland provided "insurance afforded by the policy" to

27   Western, Plaintiff agrees that the Northland Policy is considered primary "for both power unit and

28   trailer," and the Continental Policy is excess to the Northland Policy.  *See id.*; *see also* FAC at

United States District Court
Northern District of California

6

¶ 19. By this same reasoning, the Court finds that because Plaintiff provided "insurance afforded by the policy" to Western, the Hallmark Policy is also considered primary "for both power unit and trailer," and the Continental Policy is excess to the Hallmark Policy. *Id.*

Plaintiff responds that § 11580.9(h) only determines the priority of *primary* insurance policies between tractors and trailers, and what Plaintiff calls "true excess" insurance policies still only apply after all primary policies for both the tractor and trailer. *See* Dkt. No. 17 at 1, 3–7, 11–13. So in this case, Plaintiff urges that (1) the Northland Policy applies first, as the primary policy covering the tractor; (2) the Continental Policy applies second, as the primary policy covering the trailer; and (3) the Hallmark Policy applies last as the "true excess" policy applying to the tractor. *Id.*

Plaintiff's interpretation that § 11580.9(h) applies only to primary insurance policies and not to "true excess" policies, however, is divorced from the text of the statute. Section 11580.9(h) applies "when two or more policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers." Cal. Ins. Code § 11580.9(h). The statute does not state that it only applies to "two or more *primary* policies affording valid and collectible automobile liability insurance apply to a power unit and an attached trailer or trailers." *See id.* Plaintiff's interpretation thus sidesteps "the elementary principle that a court cannot add or subtract words to or from the statute." *See Scottsdale*, 229 Cal. App. 4th at 1172; *see also Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1047 (Cal. 1999) ("If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (quotation omitted)).

Rather than interpreting the language of subdivision (h), Plaintiff relies on *Continental Ins. Co. v. Lexington Ins. Co.*, 55 Cal. App. 4th 637 (Cal. Ct. App. 1997). In *Continental*, an insurance dispute arose between the insurers of a tractor and trailer following a traffic accident. *Id.* at 641. The tractor's primary insurer appears to have acknowledged that it was first in priority. *Id.* The trailer's insurer, Continental, then argued that it was excess to the tractor's excess insurer, Lexington. *Id.* at 644–47. The court held that the trailer's primary insurer could not recover from the tractor's excess insurer, reasoning that "[t]he general object and purpose of the Lexington

United States District Court
Northern District of California

1   policy was to provide excess coverage over and above all other underlying insurance, while the

2   general object and purpose of the Continental policy was to provide primary insurance." *Id.* at

3   647.  The Lexington insurance policy was thus a "true excess" policy "above any type of primary

4   coverage." *See id.* (citing 8A Appleman, Insurance Law and Practice § 4909.85, at 453–54

5   (1981)).  Plaintiff suggests that *Continental* indicates that the Hallmark Policy, as a "true excess"

6   policy, should not have to contribute prior to the Continental Policy, which it considers a primary

7   policy.  Critically, however, *Continental* predates subdivision (h), which was enacted in 2006.

8   The court in *Continental* held that the prior subdivisions of § 11580.9 did not apply at all, and the

9   court relied instead on the language of the respective insurance policies.  *See id.* at 642–47.  The

10  reasoning of *Continental* is thus inapplicable here.

11      Plaintiff's reliance on *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App.

12  3d 1285 (Cal. Ct. App. 1989) and *CSE Ins. Group v. Northbrook Property & Casualty Co.*, 23 Cal.

13  App. 4th 1839, 1844 (Cal. Ct. App. 1994) is similarly misplaced, as both cases predate subdivision

14  (h) and turn on the language of the relevant insurance policies.  In *Hartford*, for example, the

15  owner of the vehicle and the driver of the vehicle each had a primary and an excess policy.  *See*

16  *Hartford*, 211 Cal. App. 3d at 1296.  In determining the priority of the policies, the Court

17  concluded that under § 11580.9(d), which sets out a different statutory presumption, the driver's

18  primary policy was primary to all the three other policies.  *Id.* at 1297–1301.  The court held that

19  subdivision (d) did not dictate the priority of the remaining policies, so the court then looked to the

20  provisions in the remaining policies to determine their priority.  *See id.* at 1301–03.  The court did

21  not hold, however, that an insurer could insulate itself from the conclusive presumptions in

22  § 11580.9 by characterizing its policy as "excess."  To the contrary, the court noted that "several

23  policies applicable to the same loss may be deemed 'primary' or 'excess' with respect to each

24  other depending on a variety of factors including statutory presumptions." *Id.* at 1296.

25      The Court understands Plaintiff's contention that it intended its policy to be an excess

26  policy to both the Northland Policy and the Continental Policy.  But the California Legislature

27  created a bright-line rule, and § 11580.9, not the language of the Hallmark Policy or Continental

28  Policy, determines the priority of tractor policies versus the trailer policies.  The Court finds that

8

§ 11580.9 is conclusive and precludes Plaintiff's theory of liability.[1]

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** the motion.  The Court finds that, given the nature of the dispute and the Court's legal findings, amendment would be futile and the Court accordingly will not grant leave to amend.  The clerk is directed to enter judgment in favor of Defendant and to close the case.

**IT IS SO ORDERED.**

Dated:  10/29/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

---

[1] Because the Court finds that Plaintiff's theory of liability against Defendants is precluded by § 11580.9(h), the Court does not address Defendants' remaining arguments.

9